UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DWANE CHERRY-EL,<br><br>*Plaintiff*,<br><br>v.<br><br>BELINDA BLOUNT,<br>*DCHA, Housing Specialist*, *et al.*,<br><br>*Defendants*. | Civil Action No. 23-2233 (RDM) |

**MEMORANDUM OPINION AND ORDER**

This case highlights the many difficulties that non-lawyers can face in dealing with administrative agencies and the legal system.

Plaintiff Dwane Cherry-El is proceeding *pro se* in this case. He is disabled and lived for years with his mother in subsidized housing, where he was allowed to reside as his mother's live-in aide. His living circumstances have been in peril, however, since his mother passed away, and he now fears that he will soon be rendered homeless unless he is authorized to continue to reside in that subsidized housing. Defendant District of Columbia Housing Authority ("DCHA") responds that a live-in aide is required to leave the subsidized residence when the primary tenant passes away, and, although Plaintiff might be entitled to subsidized housing in his own right, the waiting list "was 13,000 when it closed in 2013," and it has only recently reopened. Dkt. 37-1 at 8–9.

Plaintiff responds that, many years ago, he "submitted the documentation . . . to change [his] status from live-in aide" to primary tenant "as a reasonable accommodation." *Id.* at 12. Although his allegations are not crystal clear, he appears to contend that he was entitled to a

hearing on his request for the accommodation and that, in any event, the DCHA violated "the [Americans with Disabilities Act ("ADA")]," D.C. Municipal Regulation 14-5316, titled Changes in Family Composition, *see* 59 DCR 7890 (June 29, 2012), the "Civil rights act [of] 1965, [the] 1965 fair housing [Act], [and the] Eighth amendment" to the U.S. Constitution.  Dkt. 30 at 2 (Amd. Compl.).

Recognizing the difficulties that Plaintiff faces in litigating this case and otherwise navigating the legal system, the Court has endeavored to locate counsel to assist him.  After the initial hearing, the Court stayed the case while the Civil Pro Bono Panel attempted to locate counsel for Plaintiff.  *See* Min Entry Dec. 12, 2023.  That process took a great deal of time, and Plaintiff eventually requested a hearing on his case.  Dkt. 28.  The Court scheduled that hearing for January 3, 2025, and notified Plaintiff as follows:

> Upon consideration of Plaintiff's Motion for Hearing, Dkt. 28, it is hereby ORDERED that the motion is GRANTED and that the parties shall appear for a status conference on January 3, 2025, at 9:30 a.m. in Courtroom 8.  The Court notes that the Clerk's Office has tried, on four different occasions, to find counsel to represent Mr. Cherry-El and has not been able to find counsel given the subject matter of the lawsuit. The Court also remains concerned about whether it has jurisdiction over this dispute.  However, the Court wants to ensure that Mr. Cherry-El has an opportunity to be heard on these issues and to hear from Defendants on whether there is any progress to be made as to Mr. Cherry-El's housing.  The Court also notes that if Mr. Cherry-El receives this minute order by mail sooner, and would like to request an earlier hearing, he is welcome to do so by emailing the Deputy Clerk and counsel for the Defendants.

Min. Entry Dec. 12, 2024.  At the hearing, the Court informed Plaintiff that the Civil Pro Bono Panel was unable to identify counsel to represent him on a pro bono basis.  Hr. Tr. (Jan. 3, 2025 Rough at 2).  The Court, then, asked Plaintiff how he wanted to proceed with the case going forward.  *Id.*  Plaintiff indicated that he wanted to continue the search for counsel.  *Id.* (Rough at 7).  The Court, in turn, provided Plaintiff with a list of D.C. nonprofit organizations that could assist him with his claim.  *Id.* (Rough at 13).  The parties agreed to return to Court on March 12,

2

2025, with Plaintiff either confirming he had found a lawyer, and if not, setting a schedule for Plaintiff to file a brief in opposition to Defendants' motion to dismiss. *Id.* (Rough at 14).

At the March hearing, Plaintiff indicated that he "wasn't able to reach out to any lawyers" and, therefore, did not find counsel to represent him. Hr. Tr. (Mar. 12, 2025 Rough at 2). Defendants indicated that service at that point was still improper, because Plaintiff had effected service on the Mayor of Washington D.C., but the DCHA is an "independent authority . . . [that is] not under the auspices of the mayor and office of the attorney general." *Id.* (Rough at 5). In response, the Court indicated that, for a final time, Plaintiff having counsel in the case would be beneficial. *Id.* (Rough at 7–9). Plaintiff agreed that the Court should continue to search for counsel who could represent him. At this point, the Court achieved a partial success and arranged for a lawyer from Legal Aid D.C. to meet with him. Plaintiff subsequently filed a Limited Retainer Agreement that he executed with Legal Aid D.C. in which the nonprofit agreed to represent him, but only in efforts to negotiate a settlement with the DCHA. Dkt. 32 at 7. Thus, despite the Court's extensive efforts, Plaintiff remains unrepresented in these proceedings.

This, then, leads to the pending motions, which Plaintiff urges the Court to resolve without further delay. The pending motions include the DCHA's Motion to Dismiss for Lack of Service and Failure to State a Claim, Dkt. 18; Plaintiff's Motion to Enforce Stay Order, Dkt. 26, and Motion for a Hearing on that same motion, Dkt. 27; Plaintiff's Motion for Summary Judgment, Dkt. 37, and, finally, his Motions for Status Hearing, Dkt. 42, 43. In addition to resolving these motions, the Court will consider *sua sponte* whether Plaintiff's complaint satisfies Federal Rules of Civil Procedure 8 and 12(b)(6).

A.

The DCHA's Motion to Dismiss, Dkt. 18, does not require extensive discussion. As an initial matter, the Court notes that this motion is directed at a version of Plaintiff's complaint that is no longer operative. As Plaintiff explained at an earlier hearing, he intended a document that he filed on February 27, 2025, as a "Response re Status Conference," Dkt. 29, to serve as his amended complaint, *see* Hr. Tr. (March 12, 2025 Rough at 15), and the Court, accordingly, deemed Plaintiff's "Response" to constitute his amended complaint, *see* Dkt. 30, which was treated as filed on March 12, 2025. The Court also directed the United States Marshals Service to effectuate service on the DCHA, and the Marshals Service filed a return of service on June 6, 2025, Dkt. 34. Given these developments, the Court will deny the DCHA's Motion to Dismiss as moot.

The Court further notes, moreover, that the substantive defense raised in this motion is off point. In particular, Defendants assert that "they are entitled to government[al] immunity . . . pursuant to D.C. Code 22-4013(a)." Dkt. 18 at 1. That provision provides as follows:

> The District of Columbia government and its agencies, officials, employees, and agents and the United States government and its agencies, officials, employees, and agents shall be immune from suit for any claim arising from any good faith act of omission under this chapter.

D.C. Code § 22-4013(a). The statutory reference to "this chapter" is to Chapter 40, which specifies rules and regulations relating to the District's sex offender registry. Because Plaintiff's claims have nothing to do with the sex offender registry, § 22-4013(a) has no application to this case.

B.

Plaintiff's Motion to Enforce Stay Order, although far from clear, appears to request that the Court require the DCHA continue to subsidize the apartment where he resides while this case

4

is pending. Dkt. 26. To the extent Plaintiff construes anything that the Court said at the December 12, 2023, hearing to have imposed such a duty on the DCHA, he misunderstood. Moreover, to the extent that he seeks a preliminary injunction requiring that the DCHA subsidize his rent, he has failed to carry his burden. A preliminary injunction is a "drastic and extraordinary remedy," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010), "that may only be awarded upon a clear showing that the plaintiff is entitled to such relief," *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

To obtain a preliminary injunction, the movant "must establish" (1) "that he is likely to succeed on the merits;" (2) "that he is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "that the balance of equities tips in his favor;" and (4) "that an injunction is in the public interest." *Id.* at 20. Here, as explained below, the Court is not persuaded that Plaintiff has stated a claim upon which relief may be granted or satisfied the basic pleading requirements set forth in Rule 8, much less that he is likely to prevail on the merits. Although the Court recognizes that Plaintiff might be rendered homeless if not granted relief, the Court lacks the authority to grant an affirmative, preliminary injunction in a case in which the movant has failed to identify a plausible claim for relief.

Plaintiff also requests a hearing on this motion. Dkt. 27. Since Plaintiff made this request, the Court has held at least two status conferences and has provided Plaintiff with ample opportunity to be heard. The Court is unpersuaded that holding another hearing on this motion would serve any purpose. The Court will, accordingly, deny Plaintiff's request for a hearing as moot.

## C.

Plaintiff also moves for summary judgment, Dkt. 37, but he offers no additional argument or evidence that would justify granting him final relief in this case. As further explained below, the Court is not convinced that Plaintiff has alleged a plausible claim for relief. His motion for summary judgment is, if anything, a step backwards. He asserts as follows:

> In light of Supreme Court Decision—I first would Proclaim Nationality and Birth Right under the Constitution of the United States of America. I am Moorish American Jus Soli – Right of Sol Jus Sanguinis Right of Blood Principles of Nationality to be Recognized as a True Citizen. No other motion they have file date Dec. 12, 2023 I ask the Court to Rule in the above case. They have not responded to any briefs.

Dkt. 37 at 1. To the extent Plaintiff seeks summary judgment, he has failed to carry his burden of establishing as either a matter of law or fact that he is entitled to relief. Alternatively, Plaintiff's motion might be construed as a request for an entry of a default judgment. That Draconian form of relief is not justified on the present record. Among other things, although Plaintiff has continued to file various motions, the Court previously entered a stay to permit Plaintiff to locate counsel, and the Court has yet to lift that stay. *See, e.g.*, Min. Entry Dec. 12, 2023; Min. Entry Mar. 12, 2025. Defendants' counsel, moreover, has appeared for all of the status conferences held to date and has meaningfully engaged in the litigation of this matter.

Finally, Plaintiff's motion might be understood merely to request prompt action on a case that has been pending for over two years and that addresses questions of imminent concern to Plaintiff's well-being. That understanding of Plaintiff's motion is confirmed by Plaintiff's recent filing, which once again requests a status hearing and which highlights how long the case has been pending. Dkt. 42; *see also* Dkt. 43. Understood in that light, the Court is in agreement. The principal reason that the case has languished is that no pro bono counsel has agreed to represent Plaintiff, despite the Court's prolonged efforts, and Plaintiff has had no greater success

6

in locating pro bono counsel on his own. Because that process has now run its course, the Court will now lift the stay and will turn to the merits of Plaintiff's claims.

### D.

Although courts hold *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted), the Court may dismiss a complaint *sua sponte* under Federal Rules of Civil Procedure 8(a) and 12(b)(6) if "it is patently obvious" that the plaintiff cannot "prevail[ ] on the facts alleged in his complaint," *Baker v. Director, U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990); *see also Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011).

Here, Plaintiff's complaint, Dkt. 30, fails to comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a),[1] or with Rule 12(b)(6), which requires "sufficient factual matter, [which if] accepted as true, [would] 'state a claim to relief that is plausible on its face,'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Rule 8(a), in particular, "ensures that the opposing party will receive 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Jones v. Changsila*, 271 F. Supp. 3d 9, 21 (D.D.C. 2017) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93

---

[1] Rule 8 also ensures that defendants receive notice sufficient to determine whether the plaintiff's claims are barred by *res judiciata*. *See Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977). Here, Plaintiff pursued claims similar to those at issue here in an action brought against the DCHA in D.C. Superior Court. *See Cherry-el v. Pooler*, 2022-CA-00633-B, (D.C. Sup. Ct. 2022). That matter was dismissed for failure to prosecute in December 2022, and Plaintiff's subsequent motions to reopen and reconsider the case were denied in July 2023. *See id.* Omnibus Order (D.C. Sup. Ct. July, 10, 2023). Plaintiff subsequently appealed the denial of his motion for reconsideration to the D.C. Court of Appeals, *see Cherry-el v. Pooler*, 23-cv-606, (D.C. 2023), but that appeal was also eventually dismissed on procedural grounds in February 2024 based on Plaintiff's failure to timely submit a brief, *id.* Order Sua Sponte Dismissing Appeal (D.C. Feb. 27, 2024). Defendants have not moved to dismiss on the ground that *res judicata* bars the present action, presumably because the D.C. courts never adjudicated Plaintiff's claims on the merits. *See Smalls v. United States*, 471 F.3d 186, 192 (D.C. Cir. 2006).

(2007)). "Where a complaint is insufficiently focused, it places an undue burden on the defendant to answer or move[,] and it invites unnecessary delay and confusion in the proceedings." *Achagzai v. Broad. Bd. of Governors*, 109 F. Supp. 3d 67, 71 (D.D.C. 2015); *see also Jiggetts v. District of Columbia*, 319 F.R.D. 408, 415 (D.D.C. 2017) (dismissing complaint pursuant to Rule 8 where the "seemingly irrelevant and unnecessary facts . . . obscured" the legal basis for the plaintiff's claims" and rendered it "nearly impossible to discern" which facts were "essential"). Even when considered liberally, and "in light of all [his] filings," *Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015), the complaint fails to identify *what* allegedly happened or *how* the relevant events allegedly violated a federal statute or constitutional provision. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).

Plaintiff's complaint alleges, in conclusory terms, that the DCHA, the Mayor, and the Attorney General of the District of Columbia have "violated the ADA, American Disabilities Act, and DCR chapter 14-53 recertification, Housing Quality Standard Inspections and family moves, 14-5316(8)(c), Civil Rights Act of 1965, 1965 fair housing, Eighth amendment U.S. Constitution, Cruel and unusual punishment." Dkt. 30 at 2. He then alleges:

> It is the plaintiff argument that the lower courts error in the dismiss of the above case for warrant of service understanding that the plaintiff is disabled and was corrected by the court ordered on 10-16-2023. By the honorable Judge Randolph Moss. Under rule 14 and 45 that the plaintiff is disable person and it's the duty of the court to order the U.S. Marshals Service to service the defendants . . . . The lower court order ruling in D.C. Superior court and courts of appeals. Violation of my due process [E]ighth [A]mendment and Fifth Amendment and 14th Amendment of the United States Constitution.
>
> The D.C.H.A. has been and continues to be dysfunctional and abuse it. Authority and is criminal to the disabled citizens. The Audit of October 13, 2022 reflects that facts they close the building with no forwarding address no contact information and abandoned the building on 1133 North Capitol St. N.E. leaving all the records and personal document behind social security cards, birth certificates and records of the housing list. As the lead attorney David Adam Rosen confess that I was not on the housing list. . . . These actions are not in

> good faith and have cause great harm and pain in the event of death of my family member and health care taking provider and has created a[n] unstable living condition and mental and physical health and great financial debt. There is no immunity for damages it is the responsibility to professionally follow the laws and guidelines of the D.C.H.A. and ADA 42 U.S.C.

*Id.* Finally, Plaintiff's operative complaint concludes by alleging that Defendants "should not discriminate against the disable[d] citizens who are more in need of the subsidized housing program," and this Court should enter an order preventing Plaintiff's removal "from his home" and awarding "back payment for rent and housing voucher." *Id.* at 3. Beyond this pleading, the Court has also reviewed Plaintiff's other submissions and the documents that he has filed in an effort to discern the precise factual and legal nature of his claim. Despite these efforts, the Court concludes that Plaintiff's claims remain too vague and uncertain to proceed further at this point.

The first paragraph of Plaintiff's operative complaint appears to allege that he should be relieved of the obligation to effect service in light of various federal statutes and constitutional provisions because he is disabled. For present purposes, the Court need not wrestle with those allegations because Plaintiff is correct that, since he is proceeding *in formal pauperis*, the Court is responsible for ensuring that the U.S. Marshals Service effects service. Because the Court has not dismissed the case for lack of service, however, and because the DCHA has appeared, the first portion of Plaintiff's complaint does not present a ripe controversy. The remainder of Plaintiff's complaint, however, is difficult to decipher.

Most notably, although Plaintiff alleges that the DCHA discriminated against him based on his disability, he fails to allege the essential elements of a claim. Construing his complaint liberally, the Court assumes that he intends to bring suit under Title II of the ADA, 42 U.S.C. § 12132, or the Rehabilitation Act, 29 U.S.C. § 794, *et seq.*, which prohibit discrimination based on disability and, along with their implementing regulations, "require that public entities and

9

programs receiving federal funds take reasonable steps to avoid administering" programs in a discriminatory manner, *see Brown v. District of Columbia*, 761 F. Supp. 3d 34, 41 (D.D.C. 2024) (internal quotation marks and citation omitted), and the Fair Housing Act, 42 U.S.C. § 3604(f)(2), which prohibits discrimination in the administration of housing.

But even providing Plaintiff with that benefit of the doubt, his pleadings fail to offer a "short and plaint statement . . . showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It is unclear, for example, whether Plaintiff is challenging his designation—or non-designation—as a live-in aid for his mother; whether he contends that he is—or is not—on the list of those awaiting subsidized housing; if he is on the list, whether he contends that he is entitled to move ahead of other applicants on the list due to his disability; whether he contends that the DCHA granted his an accommodation, which it then failed to implement, or whether the agency never granted him an accommodation; if he was granted an accommodation, what relief was he granted; whether he contends that the closure of the North Capitol Street office of the DCHA violated the ADA, the Rehabilitation Act, or the Fair Housing Act, and if so, why; or whether he contends that either these statutes of the U.S. Constitution requires the DCHA to offer subsidized housing to those with disabilities. In short, the Court can only guess what he intends to allege, and, thus, the complaint leaves the reader without fair notice regarding the nature or substance of Plaintiff's claims. This difficulty, moreover, is only exacerbated by the fact that many of these potential readings of Plaintiff's pleadings would clearly fail to state a claim. The Eighth Amendment, for example, addresses "punishment" and does not provide for the basic needs of those who are neither incarcerated nor otherwise subject to penological control.

The Court, accordingly, concludes that Plaintiff's operative complaint—even as construed in light of all of his other filings and in light of his *pro se* status—fails to satisfy the requirements of Rules 8 and 12(b)(6).

The Court understands that Plaintiff is disabled and that he risks losing his home, and it further understands how daunting the legal system can be to those who are not trained in the law. It is for that reason that the Court has made numerous efforts to help him located counsel and has encouraged him to make his own efforts. But Plaintiff has—understandably—urged the Court to move forward with his case, notwithstanding his lack of counsel. In doing so, however, the Court must apply the Federal Rules of Civil Procedure and must follow the governing law, and, based on what is now before it, the Court concludes that Plaintiff's complaint is insufficient and must be dismissed without prejudice.

## CONCLUSION

For the reasons stated, it is hereby **ORDERED** that Plaintiff's complaint is *sua sponte* **DISMISSED** without prejudice pursuant to Federal Rules of Civil Procedure 8 and 12. Defendant's motion to dismiss, Dkt. 18, and Plaintiff's Motion for a Hearing, Dkt. 27, are **DENIED** as moot; and Plaintiff's Motion to Enforce Stay Order, Dkt. 26, Motion for Summary Judgment, and Motions for Status Hearing, Dkt. 42, 43 are **DENIED**.

A separate order shall issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  August 13, 2025